Case 14-7079 Kathy Radtke, et al. v. Maria Caschetta, Life Care Management Partners, et al. Appellants Mr. Lesch for the Appellants, Mr. Salt for the Appellant May it please the Court, my name is Alan Lesch and I'm here on behalf of the Appellants. In this case, the administrative exemption to the FLSA should apply. The work done by each of the appellees was quintessentially back office overhead. When you say that, do you see a legal error in the judgment below or factual error in that the facts just don't add up the way? Well, we'll vote. No reason. Which one do you want us to, you're asking us to reverse, which one do you think we can reverse on? Because it's pretty hard to reverse on findings by a jury. Right. Well, it's obviously, I'm going to address the legal error. The legal error here is that the evidence in the record shows that each of these two people were operating independently, making decisions that were related to money. The coding of these claims was integrally related to the budgeting of both Walter Reed and in the Pentagon. In the case of Ms. Cunningham, she created the entire department. It was the first time that Walter Reed was going to have a third party coding department. She trained the doctors. She created the coding and billing requirements. She essentially created her job. Ms. Radtke did the same thing over at the Pentagon. Each of them were hired because they were very experienced and very seasoned medical coding professionals. I mean, that's your view of the evidence. And on the other side, I had a different view of the evidence. And so it sounds like you're back to arguing about evidence rather than legal error. Well, the legal error is that no reasonable juror hearing the evidence in the record could find that these people were entitled to overtime. There was no evidence in the record. And that's the standard that we should apply? Well, the court should find that they were administratively exempt and that they also were exempt under the professional exemption. What I'm trying to figure out is normally in our GEICO case, the question of whether someone falls within the administrative exemption, the professional exemption, is a question of law that we review de novo. Judges in a fact-finding capacity would find the facts, but whether those facts add up to administrative or professional is supposed to be a question of law. But it seemed like that question of law was given to the jury here. And you didn't object to that. So now I'm trying to figure out, do we review it like a jury verdict or do we follow our review as a matter of law from GEICO? Well, I believe that you do both because remember that there was a summary judgment motion here that in our view should have been granted in our favor. I know, but the Supreme Court has held that once a final judgment's entered, we don't go back and ask whether summary judgment was properly granted or denied. So we can't do that. Well, there is no evidence in this case presented at trial other than the two plaintiffs contradicting their prior statements about what they did in those trials. That's not accurate. I mean, there were timesheets that were in here, too, right? All the timesheets did was pick a coding number to say that they spent time coding. The only testimony, the only documentary, the only documents that came into evidence about what these people did was from their resumes. Three separate resumes Ms. Cunningham submitted, each of them substantially similar, stating that she was responsible, she was in charge, she created the department, she made decisions, she trained doctors, and she overrode the decisions of doctors. What time frame was applied to determining what their duties were? Do we look from the timesheets that look like they covered about a year, or what is the relevant time frame that we should apply in determining what their primary duties were? Well, it would be during the time that they worked there. The entire time they worked for the company? Well, during the time that Cunningham worked at Walter Reed, and during the time that Ratke was overseeing the coding services over at the Pentagon. What were those time frames? It's like ten years ago. Ten years ago? I mean, you're supposed to look for ten what someone's job is, what their primary duties are over ten years? Is that what you argued below? No, what we argued below was that my clients came and testified what they did, what the customer, in this case the customer was the federal government. And the customer came to my clients and put out an RFP for professional, responsible coders who could operate independently. My clients went and located these two people based upon their representations as to what their experience was. Ratke had some 15 years doing this work and was certified. Cunningham was even more certified and more experienced. They hired these two people because the government asked to send somebody who could operate independently, make judgments. You're talking about people who are responsible for millions of dollars in budgeting, right? The medical coding decisions that each of these two people made on their own impacted directly the budgets and the money that these institutions would receive. Was medical coding inherently then an exempt task for purposes of overtime and extermination? No, I wouldn't say that. It's just like there are lawyers who are doing document review and getting paid by the hour, and there are lawyers who are paid by a salary depending upon the type of work that they do. Are you suggesting that lawyers that are doing document review and paid by the hour would be non-exempt? Well, they are, and there's thousands of them in the district that look through documents, circle the name Smith, and then they hand it in to their supervisor. I mean, that's not what these people were doing. They were doing medical coding. They were doing medical coding. That's really a recognized job that lots of people do. You're not saying that inherently that is a profession that would take them out of the right to overtime, right? Well, it depends upon their level of responsibility. I think the circumstances here are unique. Finally, this comes down to the jury question. Just as you were asking, this is not a legal error that you argue. This is an error of interpretation of the evidence. Well, the legal error, too, I will point out is that right after my cross-examination of the plaintiffs, where I pointed out all of these resumes and all of these misstatements and perjury because there was discrepancies between the testimony at deposition and the testimony at trial, their counsel on me direct over my objection, the Judge Facciola. He sustained my objection. He told him do not ask her how she was being paid at the subsequent job. Them, the plaintiff on the stand, having seen the case head and south, works out this answer. Had the judge instructed the jury to disregard what was stated, right? That was meaningless. Well, under our law, we do. The judge instructed the jury to disregard what was worded out, right? He did. Judge, I ask for a mistrial right there on the spot. The judge instructed the jury or not? Of course he did. Yes. Okay. So is it not the norm that we assume the jury to follow that instruction? I mean, this is not even unusual. Well, this is unusual. In the 75 trials I've done, I've never seen a party take the stand and ignore the judge's instruction not to testify about that. In the 75 trials you've done, have you seen one where we reverse the case on the basis of what a witness blurted out where the judge gave an instruction not to? I haven't seen that in the cases I've done, and thankfully I haven't been here. Have you seen any case where we've said the case is reversible where the judge has instructed the jury to ignore what was said? I can't point to any, but in this case, the central issue is whether these people should have been paid by the hour. That was it. That's what the jury was listening for. I have a question because it's interesting. I mean, you were talking about what their resumes said, but you all were the employer. Did you put in evidence somewhere of your description of what their position was? Well, the two individuals, Kishida and Molina, testified at length at trial as to what the work. Not what the work is, what their position was described. Surely you had a position description. Every employer does. Was it described as medical coder, supervisor? I believe that the only description in the paper was in the government contracts that were put in. I believe it said coding professionals. Coding professionals. The reason that there was no position description, and I think Molina and Kishida testified to this, was these were new jobs that, in other words, at Walter Reed, they wanted someone to come in there and tell Walter Reed what needed to be done so there was no list of duties. Like Ms. Cunningham was sent there to figure out on her own what needs to be done and to do it, and that's exactly what she did. That's exactly what she represented that she did in her three resumes. So can you give some examples of types of jobs that are deemed to be administrative and exempt? I mean, what about a file clerk? Someone who's setting up a filing system for a new office and who is, you know, the ad for the job says, we want someone very professional, and they don't mean professional in the sense of having an advanced degree, which is what I take the Fair Labor Standards Act to be, you know, referring to professional knowledge, but they mean professional in the sense of dressing neatly, being polite, acting like an adult, taking responsibility for your actions, right? So is that file clerk exempt? Well, file clerks, I'm not going to say are exempt because they're not. They're paid by the hour. Lots of discretion of the very close to the kind that you're talking about here is vested in file clerks. You know, how to set up topic categories, where to store things, how finely to dice categories of, you know, how separately information is going to be kept, how to retrieve it. And in an office that deals with lots of money and expensive, you know, services and products, you know, like within your business or in your client's business, you know, it's important. But I don't think that makes it exempt as an administrative recording judgment. A person operating as a CFO or a high-level person in the accounting department making decisions that result in thousands, tens of thousands, millions of dollars as discretion. That's what these people were doing. They were acting as CFO? No, they were making decisions on coding and determining whether or not a procedure should be reimbursed at a million dollars or ten dollars. Well, they're really just trying to decipher what procedure did the doctor do? Did the doctor do, you know, a scan? Did the doctor do a biopsy? Did the doctor do a splinting? Did the doctor bandage? You know, and just to translate that and say, in fact, what happened? If not setting up a new scheme of pricing, well, that's worth. Well, if the code is wrong. Right. Okay, that's what I'm talking about. And if the key contract is filed in the wrong place, the whole commercial real estate deal could go south. Well, if anyone loses documents, you know, you can say that for everyone in any office. Each of those people, though, are not making decisions whether or not the code should be charged at a million dollars or at ten dollars, and they're also not training the very doctors how to do it, and they're not telling the facility how to set up their systems so that they can capture this money and they can go to Congress and get more money for their budgets if they need it to train the returning soldiers. All right, thank you. I think we'll hear from the appellee now. I need to see my notes. May it please the Court, my name is Micah Salve. I'm joined by my colleague Dennis Chong. We represent the plaintiffs. Your Honors, the defendants lost at trial. They're unhappy about that. That's understandable. They want a do-over. Also understandable. That's what we do here. We give people do-overs. Sometimes. But you do that. We decide whether to give people do-overs. That's right. And when this Court makes decisions based on do-overs, it does so in a jurisprudential way. It looks at the rules 50B and 59A to determine whether the conduct at trial was appropriate. In this case, the issue is not really whether our clients were exempt employees. There was evidence presented to the jury. The jury made a determination. That determination, those factual determinations reached by the jury, are done. That's the end of the case. Unless my colleague can point to evidence that shows that no reasonable jury could have reached that factual determination. So can you help me sort this out? Because my understanding of our GEICO decision is that the determination whether someone is administrative or professional is a question of law reviewed de novo. The facts of what they did are facts to be decided by a jury. But it seems to me here the trial judge gave that legal question to the jury. And the other side said, oops, no, that's not how it should be. And so given that no one has presented that problem to us, does that mean we now just ask the factual question of whether it was sufficient evidence to allow a rational juror to make this determination that was supposed to be decided as a matter of law? Or do we have to go ahead and still determine as a matter of law without the benefit of any fact findings what their status is? Your Honor, I don't think that this Court is put in that difficult position because this case is a fact-driven case. There are always fact-driven cases as to what someone's status is. So I don't think that distinguishes anything. The question is we have no fact findings, and then we're supposed to review a legal determination that wasn't made. But everything seems to be waived. Well, in a sense it was made. That is to say that in the defendant's motion for judgment, notwithstanding the verdict, the judge was very clear both as to the factual determinations and as to the implication of those facts. Yes, but was the judge doing that under a de novo legal determination, or was the judge doing what most judges do with a J&OV motion after a jury trial? Ask himself, could any rational juror have concluded that A, B, C, D, and E, taking the evidence that lied most favorable to the verdict, add up to administrative exemption or professional exemption? It's an interesting question. I'm not sure that I could answer that without looking very carefully at the judge's decision. But I'll point out first that we were satisfied to have the jury decide that. If it's a legal question, certainly either side could have said, Your Honor, we want you to decide that. But the conclusion, the outcome of the case is not invalid when the jury decides it, particularly in a case in which the conclusion, when we take the factual determinations that properly reside with the jury, when we take those factual determinations in place, those are the rules. We're guided by those factual determinations, then the outcome in this case is not subject to debate. There really is no reasonable question as to whether these employees were exempt when we look at the facts and how those facts were determined by the jury. Do you litigate these kinds of cases? Do you litigate them elsewhere? Yes. So how does this normally happen? Do you normally actually ask the jury to find the facts and the judge does the law, or do you send questions to the jury, or does it all turn out in jury instructions? This was very unusual, Your Honor, because the judge, not quite in respect to that, but because the judge in this case actually posed questions to the jury. After the jury made a determination, the judge sent them back for the next determination. And that happened multiple times. That was very unusual. But ordinarily. I was just wondering, do we have the jury instructions? I assume that the judge made legal determinations and instructed the jury on what the Fair Labor Standards Act required for putting people in either the administrative or the professional category. But I don't see them. I may have missed them. But they're not in the joint appendix, the jury instructions on the legal or these verdict forms. If the judge is correct, which really should never be stated as an if, then indeed that was a lapse. The jury instructions should have been. The instructions are available in the record. Right. They're just not in our joint appendix. But I don't know about this verdict. Was there enumerated jury fact findings then? Is that what you're telling me? There were some. Yeah, right. There were some. Am I being helpful to the court if after argument you could just to make things easier? It's hard for us sometimes to find things. Send in a copy of the jury instructions and if there's these specific jury fact findings or whatever the verdict form was that answered these questions. There was a detailed, at least one if not multiple, detailed jury instruction forms. I mean, sorry, jury decision forms. Okay. That would be helpful to see. We don't have them here in the J.A.? No. I don't think so. You're better prepared than I am, Your Honor. I'm asking that as a question. I'm a little better prepared. No, I don't. Do we have them here in the J.A.? No, I do not believe that they are in the joint appendix. They're in the record. I don't feel they are. I don't think the jury instructions aren't there either. Correct, Your Honor. Okay. But as I understand it, you've correctly stated the standard of review, which is essentially you read the facts of the record in the light most favorable to the verdict and you determine given that, can the determination stand up on the law? And I guess my main question to you would be about the arguments that appellants are making about discretion and decision making and judgment and also the training. You know, what are your most succinct answers to why these are sort of super coders and why their status as such doesn't really put them into a category more like a chief financial officer as Mr. Lesch would have it? Well, preliminarily, I'll say that the determination as to what the plaintiffs were actually doing was decided by the jury, and the jury decided that the work that was done did not meet the definition of exempt. So that's part of it. Much more substantively, maybe the best illustration, frankly, I think a file clerk is the best illustration, but there are so many of them where the outcome of the work, excuse me, the performance of the work demands using your brain, thinking, acting responsibly, and being detail-oriented, and indeed making decisions, that does not convert it to exempt work. What is the time frame that was used here and what's the time frame that should be used? Because it seems like aspects of the work were doing the coding, but there were moments, at least in time, when they actually had a lot of organizational or supervisory activities to undertake as well. What else? Do we look at per year? Do we look at the full statute of limitations period? This is going to be determined ab initio by the plaintiff's lawyer, who's going to draft his or her complaint and say, you know, I couldn't tell from the complaint here, though, what the time period was supposed to be. Right. In this case, it was the full period. As a legal question, neither the plaintiff's lawyer nor the defendant's lawyer can say, I'm just going to look at this one segment of time. I believe that the way the regs are written, which track the statute itself, is that you look at the job in toto. Now, that's the job in toto probably at any given time, but also over a period of time. In other words, if— And courts haven't been clear about what that period of time is supposed to be. I don't think that the courts have been clear. I don't know that there's guidance on this. It seems to me, Your Honor, that if there were a period of time where somebody's work was clearly exempt, let's just say that for more than a mere passing period, more than a matter of weeks or even months, let's say somebody works for three years as a full-fledged lawyer, making all the sorts of judgment calls and discretionary decision-making and the like that's required of a full-fledged lawyer. That would clearly be exempt. Perhaps then the lawyer has a family issue or a personal issue of some sort, which causes him or her to decide to change the work that they do, and they become somebody who's doing document review, whose task solely is to look for the word hypochondriac or whatever it may be. At that point, the work has changed. There was no indication in the record here that that was the case. In fact, as Your Honor has pointed out, the time records show in a consistent way that 75% or 92% of the work done by each of these plaintiffs was rote, prosaic medical records coding. And in that regard, the defendant, Ms. Kaschetta, testified that making those rote, prosaic decisions is an area where they do not have discretion. Now, if in a case in which there are occasional tasks given to a non-exempt employee that do indeed require judgment, discretion in matters of importance, that sort of thing, and if that would convert the job into an exempt position, that would be a mess. It first would run afoul of very clearly written regs. The regulations on this make it very clear that you look at the job as a whole and that you look at the work that comprises the primary responsibility. In this case, even if it were true that the plaintiffs had work which called on the exercise of judgment and discretion, which we do not concede, even if it were true, it obviously is not their primary duty. Their primary duty, and it's undisputed, was medical records coding. It is how they spent virtually the entire day. Can you give us just a tiny bit more granularity? What do they see on the doctor's notes, and how do they make a decision? Just examples of what that looks like. The first task that they have is to try to translate the doctor's handwriting, sometimes, or very often, their forms. And the doctor will check off a box identifying the task that he or she completed. But the medical records coder has to look at the narrative as well and make sure that whatever decision the doctor might have made matches with the actual narrative discussion of the work. So they're kind of proofing, because if it's those forms, at least, that we all get at the doctor to submit to the insurer, the boxes are correlated with codes. Indeed. Indeed. So sometimes the doctor sloppily checks, and you're like, is it this or this, and you're trying to decide. So it's a little bit like a proofreading of a determination by the doctor, or I guess it depends. Are they using those forms? Are they using just notepads? You're highlighting an aspect of the case that the defendant has focused on. There were certainly times that our clients would have to go to the doctors and say, look, doc, you can't keep checking this box because what you're doing is actually more sophisticated, and it's the wrong box to check. So if you don't want to get a raise, keep checking the box you're checking. It's the wrong box. That sounds like quality control. Yeah. Sure, a lot of quality control. Which isn't exempt. They have these very thick books that list all the codes. There's no question that the job of the medical records coder is to figure out which of these codes apply. No, but I think the regulations list quality control as a type of job that might typically be exempt. Quality control is definitely on the list. It might be exempt. It's true, but it isn't ipso facto. No, but then that description of the process, the extent you said it's a lot of quality control, sounds like it cuts against you. Well, only if the job of quality control is one in which the employee is exercising judgment and discretion in matters of importance. There could be a lot of quality control jobs that concern objective facts, and that's what you're saying this is. Yes, Judge Sentel. So that if I'm doing QC on a factory floor, and I'm watching for paint drips, and I'm watching for ragged edges of the metal, I'm very clearly not an exempt employee. So, again, you don't look just at the title of the job, but at the substantive work that was done. And one last question, because I know you're out of time. I know there was an issue about a statement about exemptions happened to be made, demonstrated by clear and convincing proof. And then there was an objection, but, in fact, the law in this circuit is unsettled. Indeed. As to whether it's clear and convincing or preponderance. Do you know, do you have a view on what the right one is, and do you have a view, or can you tell me what courts generally are doing in that area? Well, I'll say this. Our district court, of course, lacks guidance from you folk, and it would be terrific in the FLSA realm if this court could address that. The courts, the district courts have been using the clear and affirmative evidence standard. I'm not entirely sure what that clause means, because it's not the same as clear and convincing, I think, except that if we look at, I think I remember the name of the case, one of the very first cases in which, yes, it was the Roney case, 790F sub 23. That case introduced, as best I was able to determine, the clear and affirmative evidence standard. And in that case, the district judge relied on the Fourth Circuit. Now, the Fourth Circuit is one of those circuits that uses clear and convincing. And my read is that the district courts have, I think, uniformly, therefore, used the clear and convincing standard. I believe that that's the appropriate standard, particularly given the ---- Does that matter in this case? I'm sorry? Does that matter in this case? No. Okay. No. No. You know, the evidence is overwhelming in this case, so we clearly meet the standard anyway. All right. Thank you very much. Thank you, Your Honors. Mr. Lesch, we'll give you two minutes for rebuttal. No time left, right? All right. We'll give you two minutes. I'd just pick up on what you pointed out during both of our arguments, that it seems that there was plain error here in the court. Judge Facciola should have ruled as a matter of law. We had moved for summary judgment. The case was then before Magistrate Judge Robinson. The case had started out with Judge Sullivan. It got bounced around and bounced around. We had moved for judgment as a matter of law before Judge Facciola. We objected to various of the jury instructions that Your Honors here have an opportunity ---- Do you anywhere in your brief tell us what instructions you objected to? Well, we'll supplement with the instructions in the ---- Never mind supplementing. Do you anywhere in your brief raise the instructions as needed? I don't believe that we did, Your Honor. Okay. Thank you. So you can't raise it now, can you? Well, plain error can be raised as I understand it. Your Honors can identify plain error when you see it and correct it, whether I raise it or you determine it on your own. And in this case, the decision that Judge Facciola made to put this to the jury appears to be plain error. Does plain error apply in civil cases rather than criminal cases? Sure it does, as far as I know. And I believe it was plain error here. If it's all that plain, why didn't you notice it and put it in your brief? I'm sorry? It wasn't very plain to you when you didn't put it in your brief, was it? Well, I agree with that. But Your Honors can take ---- And that's why there's an oral argument so that we can talk about things that are not contained in the four corners of the brief. And you've raised it. And I believe you should take it. You can't raise issues for the first time in an oral argument. It's a legal issue. Thank you. Thank you. All right. The case is submitted.
judges: Millett, Pillard, Sentelle